FILED
CLERK, U.S. DISTRICT COURT
December 3, 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___VPC___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLMARK INTERNATIONAL INC., <br><br> Plaintiff, <br><br> v. <br><br> ABEL GALVEZ et al., <br><br> Defendants. | Case No. 2:20-cv-04437-SB-PLA <br><br> **FINDINGS OF FACT AND CONCLUSIONS OF LAW** <br><br> Trial: October 21, 2021 |

Following the Court's summary judgment ruling and the default or dismissal of nearly all Defendants, the only claims remaining for trial were Plaintiff SolMark International Inc.'s claims against Defendant Frank Delgadillo and Defendant Delgadillo's counterclaims against SolMark. The Court held a bench trial on October 21 and 26, 2021. All witnesses submitted their direct testimony primarily through declarations,[1] although the Court gave the parties the opportunity to conduct supplemental direct examination as well as cross-examination at trial. After evaluating the evidence at trial, the Court issues the findings of fact and conclusions of law as set forth below.[2] The Court's findings of fact are from a preponderance of the evidence except where otherwise indicated.

---

[1] Plaintiff's objections to Defendant Delgadillo's trial declaration are OVERRULED.

[2] The characterization of a finding as one of "fact" or "law" is not controlling. To the extent that a finding is characterized as one of "law" but is more properly characterized as one of "fact" (or vice versa), substance shall prevail over form.

1

## FINDINGS OF FACT

1. Plaintiff SolMark International Inc. (SolMark) supplies products to national auto parts chains, including Advance Auto Parts.

2. SolMark's CEO, Michael Scott, met Defendant Frank Delgadillo through business dealings that took place before the events at issue in this suit. Scott knew that Delgadillo worked for a chemical company.

3. At the outset of the COVID-19 pandemic in March 2020, Scott contacted Delgadillo about obtaining hand sanitizer to supply to SolMark's customers. Delgadillo responded by sending Scott a spreadsheet with various products, including personal protective equipment (PPE), such as masks and gloves, that Delgadillo purported to be offering for sale.

4. Delgadillo represented in a WhatsApp text message to Scott on March 20, 2020, that he had 100,000 boxes of gloves.

5. Three days later, when Scott asked Delgadillo if the gloves were gone, Delgadillo replied that the federal government would soon be coming to Delgadillo's office to pick up gloves. When Scott asked if the government had taken all the gloves, Delgadillo responded, "We ended up getting more of the same today."

6. On April 9, 2020, after Scott informed Delgadillo that SolMark had a client who needed 25,000 cases of gloves, Delgadillo told Scott that he had the gloves and represented in a WhatsApp message that the gloves were "in LA at our warehouse."

7. Delgadillo never possessed any boxes of gloves. Delgadillo did not have gloves in a warehouse in Los Angeles. Delgadillo never sold gloves to the federal government, nor did he receive additional gloves after such a sale. Delgadillo's statements about these matters were false.

8. The Court finds by clear and convincing evidence that Delgadillo knew that his representations about the gloves were false.

9. The Court finds by clear and convincing evidence that Delgadillo made knowingly false representations to Scott in order to induce SolMark to purchase the gloves that Delgadillo claimed to have in his possession.

10. The Court finds Delgadillo's testimony on this and other matters to be not credible.

11. On April 9, 2020, Scott emailed Delgadillo stating that SolMark was prepared to purchase "100,000 boxes of 100pcs Blue Nitrile glove[s]" and requesting proof of inventory and additional information required for picking up the gloves.

12. Following additional email discussions between Scott, Delgadillo, and others, SolMark on April 14, 2020 issued a purchase order for 10 million gloves at a total cost of $795,000.

13. On April 15, 2020, SolMark received an invoice for the gloves on letterhead from G7 Environment LLC (G7 Environment).

14. On the morning of April 16, 2020, SolMark wired to G7 Environment the sum of $599,994.45, representing an advance payment of approximately 75% of the amount owed for the gloves.

15. Scott and Chris Auerbach, SolMark's president, repeatedly asked Delgadillo and his associates for information on where to pick up the gloves. On the afternoon of April 16, 2020, after Delgadillo and his associates refused to provide a pickup location, Auerbach requested the return of the wired money.

16. After repeated demands from SolMark, Delgadillo on April 21, 2020 accompanied his associate Abel Galvez to a Wells Fargo bank, where Galvez wired $500,099.94 from the account of G7 Luxury Shuttle LLC back to SolMark.

17. Also on April 21, 2020, $25,000 was wired from the same Wells Fargo account to Delgadillo. The following day, another $30,000 was wired from the same Wells Fargo account to Dessau86 Lab, LLC, Delgadillo's business.

18.     From a preponderance of the evidence, the Court finds that the $55,000 wired to Delgadillo and his business on April 21 and April 22, 2020, was a portion of the money received from SolMark.³

19.     Despite repeated demands from SolMark, Delgadillo and his associates have not returned the remaining $99,894.51 to SolMark, nor have they provided any gloves to SolMark.

## CONCLUSIONS OF LAW

20.     SolMark alleged five causes of action against Delgadillo: (1) breach of contract, (2) money had and received, (3) unjust enrichment, (4) fraud, and (5) violation of the California Unfair Competition Law (UCL). Dkt. No. 1 (Compl.). Solmark affirmatively abandoned its cause of action for violation of the UCL before trial. Dkt. No. 123 at 8 of 19.

21.     Delgadillo voluntarily dismissed his remaining counterclaims during trial.

### Breach of Contract

22.     To prevail on a claim for breach of contract under California law, the plaintiff must prove (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

23.     SolMark never formed a contract with Delgadillo individually. Instead, SolMark received an invoice from G7 Environment and wired money to a bank account controlled by G7 Luxury Shuttle LLC. SolMark's counsel contended at trial that G7 Environment was the contracting party, but urged that Delgadillo can be held individually liable for G7 Environment's contract on any of four theories:

---

³ Although there was no direct evidence presented on this matter at trial, defense counsel conceded that it was reasonable to infer the money came from the same pool.

4

(1) Delgadillo is a partner in G7 Environment, (2) G7 Environment was a joint venture in which Delgadillo participated, (3) G7 Environment is Delgadillo's alter ego, or (4) Delgadillo is subject to coconspirator liability.

24. SolMark did not produce evidence to support a finding that Delgadillo is individually liable for G7 Environment's breach of contract on any of the theories presented.[4]

25. SolMark therefore is not entitled to recover from Delgadillo on its breach of contract claim.

### Money Had and Received

26. To prevail on a claim for money had and received under California law, the plaintiff must prove (1) that the defendant received money intended to be used for the benefit of the plaintiff, (2) that the money was not used for the plaintiff's benefit, and (3) that the defendant has not given the money to the plaintiff. *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454 (2013). "Although such an action is one at law, it is governed by principles of equity." *Eng. & Sons, Inc. v. Straw Hat Restaurants, Inc.*, 176 F. Supp. 3d 904, 926 (N.D. Cal. 2016) (quoting *Mains v. City Title Ins. Co.*, 34 Cal.2d 580, 586 (1949)). A claim for money had and received is viable wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter. *Avidor*, 212 Cal. App. 4th at 1454.

27. Delgadillo received—individually and through his company Dessau86 Lab, LLC—$55,000 of the funds paid by SolMark to purchase gloves for Solmark's benefit. The $55,000 received by Delgadillo was not used for SolMark's benefit and Delgadillo has not returned the $55,000 to SolMark.

---

[4] SolMark's counsel conceded at trial that the breach of contract theory was "a stretch."

28. In equity and good conscience, the $55,000 of SolMark's funds that are in Delgadillo's possession should be returned to SolMark.

29. SolMark is entitled to recover $55,000 from Delgadillo on its claim for money had and received.

Unjust Enrichment

30. In California, there is not a standalone cause of action for "unjust enrichment." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). SolMark's claim for unjust enrichment is therefore dismissed.

Fraud

31. The elements of a claim for fraud by misrepresentation under California law are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage. *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230–31 (2013).

32. On multiple occasions, Delgadillo misrepresented to SolMark that he and his associates had boxes of gloves in their possession (including specifically at their office and at a warehouse in Los Angeles) that were available for sale to SolMark.

33. Delgadillo knew that these statements were false because he knew he did not in fact possess the boxes of gloves.

34. Delgadillo nevertheless misrepresented that he had gloves available in order to induce SolMark to send money to Delgadillo and his associates as payment for the gloves.

35. SolMark relied on Delgadillo's misrepresentations and wired $599,994.45 to G7 Environment to purchase the nonexistent gloves. SolMark's reliance on Delgadillo's representations was reasonable based on Scott's preexisting business relationship with Delgadillo, particularly given the urgency of SolMark's clients' need for gloves and other PPE in the early stages of the COVID-19 pandemic.

36. $99,894.51 of the money SolMark sent to G7 Environment in reliance on Delgadillo's misrepresentations has not been returned to SolMark. SolMark would

1  not have sent this money to G7 Environment without Delgadillo's misrepresentations
2  that he and his associates possessed boxes of gloves for sale.
3       37.    SolMark is entitled to recover $99,894.51 from Delgadillo on its fraud
4  claim.
5           Double Recovery
6       38.    "Regardless of the nature or number of legal theories advanced by the
7  plaintiff, he is not entitled to more than a single recovery for each distinct item of
8  compensable damage supported by the evidence." *Tavaglione v. Billings*, 4 Cal. 4th
9  1150, 1158 (1993).
10      39.    The $55,000 of unreturned funds recoverable from Delgadillo on
11 SolMark's claim for money had and received is a subset of the $99,894.51 in
12 unreturned funds recoverable from Delgadillo on Solmark's fraud claim.
13      40.    Under the rule against double recovery, SolMark's total recovery of
14 actual damages on its claims for money had and received and fraud is limited to
15 $99,894.51.
16          Punitive Damages
17      41.    "In an action for the breach of an obligation not arising from contract,
18 where it is proven by clear and convincing evidence that the defendant has been guilty
19 of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may
20 recover damages for the sake of example and by way of punishing the defendant."
21 Cal. Civ. Code § 3294(a).
22      42.    The Court finds that its conclusions of law numbered 32 through 36
23 above are supported by clear and convincing evidence.
24      43.    Under California law, "an award of punitive damages cannot be sustained
25 . . . unless the trial record contains meaningful evidence of the defendant's financial
26 condition" and "a plaintiff who seeks to recover punitive damages must bear the
27 burden of establishing the defendant's financial condition." *Adams v. Murakami*, 54
28 Cal. 3d 105, 109, 123 (1991).

44. SolMark has not produced, and the record does not contain, any evidence of Delgadillo's financial condition. Accordingly, the Court is unable to award punitive damages against Delgadillo.

Attorney's Fees

45. Under the bedrock principle known as the "American Rule," each litigant pays its own attorney's fees, win or lose, unless a statute or contract provides otherwise. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010).

46. SolMark has not identified any statute or contract that authorizes a recovery of SolMark's attorney's fees from Delgadillo.

47. The "tort of another" doctrine, on which SolMark relies, provides a narrow exception to the American Rule: "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." *Prentice v. N. Am. Title Guar. Corp.*, 59 Cal. 2d 618, 620 (1963).

48. The Supreme Court of California emphasized in *Prentice* that an award of attorney's fees is not allowed "in an ordinary two-party lawsuit," but rather that the exception applies where a defendant has "wrongfully made it necessary for a plaintiff to sue a third person" such that the attorney's fees incurred in the separate suit are a measure of the plaintiff's damages rather than a measure of compensation of the plaintiff's attorneys. *Id.* at 620–21; *see also Sooy v. Peter*, 220 Cal. App. 3d 1305, 1312 (1990) ("*Prentice* merely holds that necessary attorney fees incurred in third party litigation which is proximately and foreseeably caused by a tortfeasor are recoverable as damages in an action against the tortfeasor.").

49. The attorney's fees SolMark seeks to recover are the costs it incurred to pay its attorneys in this suit against Delgadillo and his codefendants, not damages from another suit SolMark was forced to file against a third party. Accordingly, the "tort of another" exception to the American rule is inapplicable.

50. SolMark is not entitled to recover attorney's fees from Delgadillo.

## DISPOSITION

In light of the above-stated findings of fact and conclusions of law, the Court finds that Plaintiff SolMark International Inc. is entitled to recover $99,894.51 in actual damages from Defendant Frank Delgadillo.  All other relief sought in SolMark's claims against Delgadillo and Delgadillo's counterclaims against SolMark is denied.

SolMark has obtained clerk's entries of default against several Defendants and has represented that it intends after trial to move for entry of default judgment as to at least some of the defaulting Defendants.  A final judgment cannot be entered until SolMark's outstanding claims are resolved.[5]  Accordingly, it is **ORDERED** that SolMark **no later than December 29, 2021**, shall file as to each remaining Defendant either a properly supported motion for default judgment or a statement that SolMark no longer intends to prosecute its claims against that Defendant.

Dated:  December 3, 2021



Stanley Blumenfeld, Jr.
United States District Judge

---

[5] The other outstanding matter in this case is whether Delgadillo should be sanctioned for submitting false documents and making false representations in connection with his requests to delay trial.  The Court held two show cause hearings but deferred ruling on sanctions until after providing the parties a further opportunity to present evidence.  The Court now elects as a matter of discretion not to conduct further proceedings and instead to **DISCHARGE** the show cause order without imposing sanctions.